Case 2:16-cv-00518   Document 18   Filed on 07/13/17 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
July 13, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MALQUWAN HOSKINS, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:16-CV-518 |
| § | |
| LORIE DAVIS, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se* and *in forma pauperis*, Petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on December 3, 2016 (D.E. 1).[1] Petitioner claims that his right to due process was violated in a disciplinary hearing that was held at the McConnell Unit which resulted in the imposition of punishment. Respondent filed a motion for summary judgment on April 18, 2017 (D.E. 16) to which Petitioner did not respond. As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and

---

[1] Pleadings submitted by inmates generally are considered filed as of the date they are placed in the prison mail system, as long as the prisoner states under penalty of perjury the date that he placed the petition in the mail system. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases. Petitioner in this case stated under penalty of perjury that he placed the petition in the prison mail system on December 3, 2016 and it is considered filed as of that date.

Petitioner's habeas corpus petition be denied. It is further recommended that a Certificate of Appealability be denied.

## JURISDICTION

Jurisdiction and venue are proper in this court because the actions about which Petitioner complains occurred in Beeville, Bee County, Texas, which is located in the Corpus Christi Division of the Southern District of Texas.  28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner is serving a ten-year sentence for aggravated robbery with a deadly weapon concurrently with a ten-year sentence for burglary of a habitation (Ex. A to Mot. for Sum. Jmt.; D.E. 16-1). Petitioner does not complain about his holding convictions, but challenges the results of a disciplinary hearing. In disciplinary case number 20170030218 Petitioner was accused and found guilty of using a cell phone in an adult correctional facility and also of attempting to make an unauthorized commodity exchange with an unknown offender by soliciting $20 to 25 from his mother to be deposited in another inmate's account for Petitioner's benefit (DHR at p. 1; D.E. 17-2 at p. 3).[2]

In the offense report, the charging officer, M. Varela, wrote that in a letter dated September 26, 2016, Petitioner told his mother that he had not been able to call because his friend "had to get rid of the 'Cellular,' (cell phone)." The Petitioner also asked his mother to put $20 or $25 in an unknown offender's account (DHR Offense Report, D.E. 17-2 at p. 8). During the investigation of the incident, Petitioner denied making calls

---

[2] "DHR" refers to the Disciplinary Hearing Record located at D.E. 17-2.

from a cell phone or asking that money be put into another offender's account (DHR Preliminary Inv. Rept., D.E. 17-2 at p. 9). He said that he had someone call his mother for him on the "blue phone."[3] (DHR at Investigation Worksheet, D.E. 17-2 at p. 5).

At the hearing, the charging officer explained that he had come across a letter written by Petitioner explaining that he could not call his mother because the cellular phone was gone. The charging officer also testified that Petitioner did not have a TDCJ-sanctioned telephone account. In addition, Petitioner asked in the letter that the recipient put money in another offender's account. A copy of the letter was submitted at the hearing (DHR at Hearing Work Sheet, D.E. 17-2 at pp. 7, 11-12). Petitioner testified at the hearing that he had someone make a "3 way" call on the blue phone and whoever he called used a cell phone (DHR at Hearing Work Sheet, D.E. 17-2 at pp. 3, 7).

Petitioner was found guilty based on the charging officer's report and testimony. He was punished with forty-five days of cell restriction and the loss of forty-five days of recreation, commissary, and telephone privileges. In addition, his line class was reduced from S3 to L3,[4] and he lost 364 days of good time (DHR at Disciplinary Report, D.E. 17-2 at p. 3).

---

[3] Neither party explains what the "blue phone" is, but it is presumed to be a phone that inmates have permission to use.

[4] The amount of good conduct time an inmate can earn depends on his line class. When offenders enter TDCJ they are assigned a time-earning status of Line Class 1 and may work their way into a higher time-earning status or be placed in a lower time-earning status, depending on their behavior. The number of good conduct days which may be earned in a particular line class is fixed by statute. *TDCJ Offender Orientation Handbook*, rev. February 2017, at p. 8.
http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf (last viewed July 12, 2017).

Petitioner filed a Step 1 grievance in which he complained that his procedural and constitutional rights were violated and that there was insufficient evidence to support the finding of guilt, but was denied administrative relief (DGR at Step 1 Grievance, D.E. 17-1 at pp. 3-4).[5]  He filed a Step 2 grievance and again was denied administrative relief (DGR at Step 2 Grievance, D.E. 17-1 at pp. 5-6).

In his complaint, Petitioner asserts that his Fourteenth Amendment right to due process was violated because the evidence was factually insufficient to support a finding of guilt and also because he lost his F-1 parole status after he was found guilty of the offense.  Petitioner also asserts that the punishment assessed was excessive for the offense in violation of his Eighth Amendment right against cruel and unusual punishment.  In her motion for summary judgment Respondent contends that because Petitioner is not eligible for release to mandatory supervision, he has failed to state a claim for habeas corpus relief.

## APPLICABLE LAW

**A. Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that under certain circumstances a state may create liberty interests which are protected by the Due Process Clause.  *Id.* at 483-484 (citing *Wolff v.*

---

[5] "DGR" refers to the Disciplinary Grievance Record located at D.E. 17-1.

*McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)). However, the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates prison management and prisoner rehabilitative goals and that while prisoners do not shed all constitutional rights are the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977) and *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)(citing *Sandin*, 515 U.S at 484). Petitioner's complaints are examined in light of this standard.

**1. Line Class**

Petitioner was demoted in line class from S3 to L3. Generally, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir.

1995)(*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Thus, Petitioner cannot make out a cause of action based on the reduction in line class.

Petitioner argues that his line class dropped by four levels in violation of a TDCJ-CID policy that line class should never be dropped more than two levels. Petitioner did not cite to a rule or policy limiting a disciplinary hearing officer from dropping a prisoner's line class by more than two levels and none was found. In any event, it is well established in the Fifth Circuit that a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)(citations omitted). Petitioner cannot make out a cause of action based on the reduction in line class.

### 2. Conditions of Confinement

To the extent Petitioner is complaining about the loss of privileges assessed as punishment, he has failed to state a claim. Cell restriction and the loss of recreation, commissary, and telephone privileges "are not atypical punishments and do not extend the duration of his confinement." *Evans v. Thaler*, 396 Fed. Appx. 113, 113-114 (5th Cir.

2010)(per curiam) (citing *Malchi*, 211 F.3d at 958). Accordingly, it is recommended that these claims be dismissed.

### 3. Loss of Good Time

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)(citing Tex. Code Crim. P. Ann. art. 42.18 § 2(2)).[6] Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. Tex. Gov't Code Ann. §508.147 (West 2014). The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time. *Malchi*, 211 F.3d at 957-958.

However, prisoners who commit certain offenses are excluded from eligibility for mandatory release. *See* Tex. Gov't Code § 508.149(a) (West 2016) (lists offenses that render an inmate ineligible for release to mandatory supervision). In this case, Petitioner's conviction for aggravated robbery with a deadly weapon precludes his release to mandatory supervision. *See* Tex. Gov't Code § 508.147(a) (West 1997) and Tex. Gov't Code § 508.149(a)(12)(West 2009). Because Petitioner is not eligible for release to mandatory supervision, he does not have a liberty interest in earning or keeping good

---

[6] Currently located at Tex. Gov't Code Ann. § 508.001(5).

time credits and thus has failed to make out a claim that his due process rights have been violated. Accordingly, summary judgment should be entered for Respondent.

## B. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In Petitioner's case, it is recommended that his cause of action be denied on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that Petitioner failed to state a claim for violation of a constitutional right.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 16) be GRANTED. Petitioner's cause of action for habeas corpus relief should be DENIED. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 13th day of July, 2017.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).